Littleton, Judge,
delivered the opinion of the court:
The only question in this case is whether the plaintiff or the defendant was, in view of the facts established by the record,, responsible for the delay in the delivery of acceptable coats as required by the contract of June 17, 1935.
Plaintiff bases its whole case upon the allegation, which it contends is sustained by evidence of record, that the government by its failure to make prompt inspections of coats manufactured and tendered for inspection and acceptance delayed delivery within the meaning of the contract beyond the stipulated period for completion. We are of opinion that this contention cannot be sustained. Moreover, Art. 12 of the contract provided that the decision of the contracting officer on all questions of fact should be final and conclusive, and the contracting officer found, as set forth in finding 12, that plaintiff and not the government was responsible for the delay in completion of the contract and that any delay in production by plaintiff which may have resulted from plaintiff’s inability to obtain a greater amount of material for peak production was attributable to the fact that the amount of bond which plaintiff elected to furnish under the contract and specifications was not sufficient to cover the value of the quantity of materials which plaintiff contends was necessary for such production. These findings of the contracting officer, from which no appeal was taken by plaintiff to the head of the department as required by Art. 15 of the contract, are not shown by the record to have been arbitrary, unreasonable, or grossly erroneous (finding 13). The record as a whole shows very clearly that the principal and primary cause of plaintiff’s delay in manufacturing and delivering to the defendant acceptable garments was due, first, to the manufacture and tender by plaintiff of a large number of defective and unacceptable coats under the terms and conditions of the contract and, second, to its failure to furnish the defendant a bond in an amount sufficient to entitle it to receive at various times during the performance of *229 tiie contract a greater quantity of material which was to be furnished by the government. The contract and specifications did not provide the time within which the defendant should inspect the coats as tendered for acceptance, nor the method or manner in which such inspection should be made. The record, as a whole, fails to establish that the defendant at any time unreasonably delayed inspection of the articles tendered, or that the method of inspection adopted and followed by it in the circumstances was improper. For deliveries tendered between July 12 and August 15, 1935, the percentage of unacceptable coats ranged from 34.7 to 63.7 percent. The rejections on August 16 were 52.8 percent. The invitation for bids, the specifications, and the contract entered into provided that—
Bidders are informed that the term “Delivery” is interpreted to mean the receipt, at destination depot, of acceptable articles.
Bidders will state in the blank spaces provided therefor, the least number of calendar days (counting Sundays and holidays) from date of receipt of initial supply of Government materials, in which they will make and complete deliveries. In stating the time for deliveries, bidders should make allowances for both probable and unforeseen difficulties that may be encountered and they should make no promises they are not positive, beyond question, that they can fulfill, as they will be held strictly and absolutely to the schedule of deliveries offered by them.
Upon the basis of these provisions and conditions, plaintiff submitted its proposal and agreed with the defendant to manufacture and deliver 110,000 acceptable woolen coats in accordance with certain detailed specifications within 103 calendar days after the initial receipt of Government material. This the plaintiff failed to do. See Findings 4, 5, and 7.
In the letter of June 14, 1935, notifying plaintiff of the acceptance of its proposal and stating that the contract had been awarded to it, the defendant forwarded to plaintiff a performance bond on the regular departmental form in the amount of $23,450, covering 20 percent of the contract price as a guaranty of performance plus 50 percent of the total value of the material required for performance of the *230 contract, or an approximate total of $200,000. At plaintiff’s request, and upon its responsibility, a bond in the total amount of $135,400 was accepted. The amount of the bond fixed the amount of material which the defendant was required to furnish from time to time. The contracting officer correctly interpreted the contract when he included in the amount of material which plaintiff was entitled to receive from time to time the quantity of material contained in unacceptable garments that had been proffered for “delivery” within the meaning of the contract.
In view of the evidence disclosed by the record and the findings of the contracting officer, the plaintiff is not entitled to recover. Carroll Electric Company v. United States, 76 C. Cls. 103, 124-125.
The defendant interposes a counterclaim for $518.25 — see finding 14. The invitation for bids, the proposal submitted by plaintiff, and the specifications, which became a part of the contract between the parties, contained the following provision:
excess MATERIALS: Should the contractor require suiting in excess of the quantities provided by the allowances for the purpose of completing his contract, it will be furnished by the Government, f. o. b. Philadelphia Quartermaster Depot, * * *, and there will be deducted from any money due the contractor a sum equal to the number of additional yards of material furnished, multiplied by $5.25 per' yard.
During the performance of the contract, plaintiff was furnished certain materials in excess of the authorized allowance required to manufacture the coats called for by the contract. The evidence shows that the value of this excess material furrfished by the defendant was $518.25, for which the defendant demanded payment but which has not been paid. The position of plaintiff with reference to this item is that the defendant is not entitled to recover the same for the reason that the evidence shows that plaintiff effected savings in the total material furnished to it for the manufacture of the coats in question in excess, in value, of the charge of $518.25 which saved material, from the total gross amount furnished, was returned to and became the property of the defendant. In other words, upon the' completion of the *231 contract the total amount of material actually used by plaintiff in the manufacture of the required number of acceptable coats was less than the agreed allowance. This fact is established by the record. The defendant is, therefore, not entitled to recover on its counterclaim.
The plaintiff’s petition and the defendant’s counterclaim are therefore dismissed. It is so ordered.
Green, J-udge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.